UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Dale Estele SMITH [1],<br>Nicole CATRAIN [2],<br><br>Defendants. | Case No. 22MJ8743<br><br>COMPLAINT FOR VIOLATION OF<br><br>Title 8, U.S.C., Section 1324(a)(1)(A)(ii)<br>Transportation of Illegal Aliens (Felony) |

The undersigned complainant being duly sworn states:

On or about November 1, 2022, within the Southern District of California, defendants, Dale Estele SMITH and Nicole CATRAIN, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, Miguel RAMIREZ-Martinez and Yesenia Esmeralda LOPEZ-Garcia, had come to, entered or remained in the United States in violation of law, did transport or move, or attempted to transport or move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant states this complaint is based on the attached Statement of Facts, which is incorporated herein by reference.

*[signature]*

MONCERAD SOTO
BORDER PATROL AGENT

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 2nd day of November, 2022.

*[signature]*

HON. LUPE RODRIGUEZ, JR.
U.S. MAGISTRATE JUDGE

UNITED STATES OF AMERICA
v.
Dale Estele SMITH [1],
Nicole CATRAIN [2],

## STATEMENT OF FACTS

The complainant states this Complaint and Statement of Facts is based upon the investigative report by Border Patrol Agent (BPA) L. Heipt, that defendants, Dale Estele SMITH (SMITH), and Nicole (CATRAIN), both citizens of the United States, were arrested on November 1, 2022, near Calexico, California, for transporting two undocumented aliens in violation of Title 8, United States Code, Section 1324.

On November 1, 2022, BPAs assigned to the El Centro Sector Field Intelligence Team (FIT) were conducting surveillance in Calexico, California. At approximately 6:00 p.m., FIT Agents were conducting mobile surveillance on a Chevrolet Impala (Impala), bearing temporary Arizona paper license plates at the rest area on Interstate 8, located west of the Greys Well exit. BPA M. Clinton observed an Impala enter the Rest Area from the westbound lanes and park in the rest area. The Impala had a faded paint job, several scratches and dings, and appeared to be in overall poor condition. Based on his training and experience, BPA Clinton knows alien smugglers often use vehicles with a low monetary value to minimize financial loss to the Transnational Criminal Organization should the vehicle be seized by law enforcement.

Through vehicle checks, BPA Clinton discovered that the Impala was registered with an address in the 1300 Block of 10th Street in Yuma, Arizona. This address is documented

as a suspected stash house being utilized to harbor illegal aliens and this residence is under investigation by the Yuma and El Centro Border Patrol Sectors. After discovering the information related to the license plate, BPA Clinton informed additional FIT Agents in the area of the Impala's location and initiated static surveillance. While BPA Clinton onserved the Impala, FIT Agents established a perimeter in order to conduct mobile surveillance on the Impala when it exited the rest area.

At approximately 8:10 p.m., the Impala exited the rest area and began travelling westbound towards El Centro, California. As the Impala was travelling westbound, the Calexico Remote Video Surveillance System (RVSS) operator broadcasted over the Calexico East radio frequency that two individuals were observed climbing over the United States/Mexico International Boundary Fence (IBF) and were running north towards Interstate 8, east of the Gordons Well Exit. As FIT Agents reached the area, they were unable to locate the Impala, however, survenillance continued to watch the two individuals as they ran across Interstate 8 and concealed themselves on the northside of Interstate 8.

As FIT Agents attempted to catch up to a vehicle they believed was the Impala, which was approaching the Highway 98 Exit, a uniformed Calexico BPA, parked north of Highway 98 Exit, informed FIT Agents that the vehicle was indeed the Impala. The Calexico BPA as well as FIT Agents watched as the Impala exited Interstate 8, travelled south over the overpass and merged back onto the eastbound lanes of Interstate 8. FIT Agents again attempted to continue mobile surveillance on the Impala but were unable to keep constant visual on it due to its high speeds.

As RVSS kept constant visual on the two individuals who remained concealed on the north side of Interstate 8, BPA A. Botello, positioned at the rest area, watched as the Impala passed the rest area and continued travelling eastbound on Interstate 8. BPA A. Botello relayed his observation to additional FIT Agents who were positioned further east of the rest area. Fit Agents again strategically parked along Interstate 8 in anticipation that the Impala would again utilize an exit to merge back onto the westbound lanes of Interstate 8 and pick up the suspected illegal aliens that remained concealed on the northside of Interstate 8. The Impala continued eastbound on Interstate 8 and Agents continued surveillance while the Impala made several turns and maneuvers. As the Impala approached the area where the suspected illegal aliens were concealing themselves, RVSS, BPA Botello and a Customs and Border Protection helicopter (Troy) watched as the Impala slowed down, came to a complete stop and two individuals emerged from the embankment, ran to the Impala, and entered the back seat of the Impala. After the two individuals entered the Impala, the Impala quickly merged back onto the westbound lanes of Interstate 8 and continued travelling towards El Centro, California.

FIT Agents and Troy kept constant visual on the Impala as it travelled westbound on Interstate 8, taking several exits and detours, toward San Diego, California. FIT Agents coordinated with Calexico Border Patrol Agents operating fully marked Border Patrol service vehicles, to conduct a vehicle stop on the Impala.

As the Impala was approaching mile marker 17, BPA Mills positioned his fully marked service vehicle behind the Impala and activated the emergency lights and sirens of

5

his service vehicle in an attempt to conduct a vehicle stop on the Impala and perform an immigration inspection on all individuals. After BPA Mills activated the emergency lights and sirens of his service vehicle, the Impala slowed down and came to a complete stop. BPA Mills, wearing a Border Patrol rough duty uniform as well as FIT Agents, who had Border Patrol markings and insignia fully visible, identified themselves as Border Patrol Agents to the driver, later identified as SMITH, as Agents questioned both SMITH and the front seat passenger, later identified as CATRAIN, as to their citizenship, SMITH became visibly upset and began questioning Agents as to why he was being pulled over.

As additional Agents attempted to question the two backseat passengers as to their citizenship, SMITH began to raise his voice even more and loudly inform Agents that he had done nothing wrong by picking up two hitch hikers. As Agents asked SMITH to exit the Impala, SMITH refused and stated that he did nothing wrong by picking up hitch hikers, SMITH also stated that he had picked up hitch hikers multiple times throughout his life. Agents attempted to calm SMITH down and ordered him out of the Impala so that they could continue their investigation into the citizenship of his back seat passengers. SMITH continued to raise his voice and express his displeasure in the situation at hand by refusing to open the door and stating that Agents had no right to pull him over. At this time, Agents unlocked the door assisted SMITH in exiting the vehicle. SMITH continued to tense up by clutching his hands together and forcefully driving his elbows into the side of his body while hunching over so that Agents could not gain control of his arms or hands. After a

brief struggle, Agents were able to secure SMITH'S hands behind his back and calm him down.

Once SMITH was out of the Impala, BPA A. Botello identified himself as a Border Patrol Agent to the two back seat passengers and questioned them as to their citizenship. Passengers Yessenia Esmeralda LOPEZ-Garcia and Miguel RAMIREZ-Martinez both admitted to being in the United States illegally and admitted they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. Simultaneously Agents again questioned SMITH and CATRAIN as to their citizenship and SMITH and CATRAIN stated that they were United States Citizens. SMITH, CATRAIN and the two additional passengers were placed under arrest and all four individuals were transported to the Calexico Border Patrol Station for processing.

At the Calexico Station, SMITH was advised of his rights per Miranda. SMITH stated he understood his rights and was willing to answer questions without having an attorney present. Regarding today's event, SMITH recounted a story about picking up hitchhikers. Thereafter, the interview was terminated.

Material witness RAMIREZ stated he made arrangements to be smuggled into the United States for $10,000.00 USD. RAMIREZ stated that after waiting on the side of the road he and a female were picked up by a four-door vehicle which he boarded the rear seat. RAMIREZ stated that passenger a female opened the door through the inside of the vehicle. RAMIREZ was presented with a six-pack photo lineup 1A and was not able to identify

7

anyone. RAMIREZ was presented with a six-pack photo line-up 1B and could not identify anyone from the photos.

Material witness LOPEZ stated that she made arrangements to be smuggled into the United States for $8,000.00 USD. LOPEZ stated that the door was opened through the inside of the vehicle. LOPEZ stated that the driver covered them with a blanket and communicated through an application on his phone. He instructed her to turn off her location on her phone and to completely shut down her phone. LOPEZ was presented with six pack photo line -up labeled A1 and could not identify anyone

The complainant states the name of the Material Witnesses are as follows:

| NAME | PLACE OF BIRTH |
| --- | --- |
| Yesenia Esmeralda LOPEZ-Garcia | MEXICO |
| Miguel RAMIREZ-Martinez | MEXICO |

Further, complainant states that the Material Witnesses are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and that they are material witness in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.